## FAREIRA'S APPEAL.

A board of directors of a theatre, having power to lease, may remit part of the rent.

Where a theatre is built not solely for the profit of the stockholders, a Court of Equity will not command the management to lease it in any particular way.

A Court of Equity will not enjoin a majority of a private corporation from doing any act which is legal, even though the Court should deem such act unwise.

Appeal from Court of Common Pleas No. 1, of Philadelphia County.   In Equity.   No. 187 January Term, 1882.

The facts of the case are fully set forth in the opinion of the Court delivered December 3rd, 1881, per

PEIRCE, J.:

The plaintiffs and defendants, with the exception of Mrs. Louisa Drew, one of the defendants, are stockholders of the Arch Street Theatre.   Mrs. Drew is the lessee of the theatre.

The bill of complaint charges that the Board of Agents, who manage the business for the stockholders, have been influenced by interest and favoritism in leasing the theatre, by reason of which it has been let at a much lower rent than it otherwise would have brought; that the defendant, Michael M. Riter, has been pecuniarily interested with Mrs. Drew in the management of the theatre, in fraud of the stockholders, for whom he was the agent; that the Board of Agents have never fully accounted to the stockholders for all the rents collected by them; that they have made donations to Mrs. Drew out of the rents collected, or which ought to have been collected from her, to the amount of $9,600; and that the stockholders were deprived of the third row of seats, which they had enjoyed for nearly fifteen years, and have been allowed the use of but two rows, whereby they have been greatly crowded and inconvenienced.

They pray for the appointment of a receiver to take charge of the theatre, to lease the same for the best rental obtainable, and to collect the rents thereof; a full account by the Board of Agents of their receipts and disbursements as such, and a decree compelling them to pay over such balance as is or ought to be in their hands, for distribution among the stockholders

of such balance; for discovery by said Riter of the extent of his interest in the leases made by Mrs. Drew since 1861; a decree compelling him to account for such rental of said theatre as could properly have been obtained therefor; a decree declaring the present lease to Mrs. Drew to be void; a decree compelling the Board of Agents to restore to the stockholders for their use the third row of seats, of which they have been improperly deprived, and a decree compelling the Board of Agents to advertise for proposals to lease the theatre in the leading papers of the larger cities of the country; to make all efforts in their power to obtain the best rental possible therefor, and to make a lease to such persons as will pay the same.

The Master has reported a decree—

1. That Louisa Drew do pay to the Board of Agents, for the use of the complainants, the sum of $292.95, their share of the $3,000 of the rent due by her for the year ending 31st of July, 1878, and which was remitted (excepting as to the complainants) to her by the meeting of stockholders held 3rd of February, 1879, and again 12th of April, 1880.

2. That the Board of Agents restore to the stockholders of the Arch Street Theatre, for their use under their tickets of admission, the third bench or row of seats, which prior to the 12th of September, 1876, had been used by them.

3. That the Board of Agents advertise for proposals to lease the Arch Street Theatre in a newspaper devoted to theatrical matters, where such exist, and where they do not, then in a leading daily newspaper in Boston, New York, Philadelphia, Baltimore, New Orleans, St. Louis, Chicago and San Francisco, at least once a week during the month prior to the next annual meeting of the stockholders, on the first Monday in February, 1882.

4. That of the costs of the proceeding the complainants do pay one-third, they not having established a right to an account of additional rents, neither to a receiver; that Michael M. Riter, John Castner, Edwin H. Fitler, Charles E. Willis, and Jacob E. Knorr, the Board of Agents of the Arch Street Theatre, and Louisa Drew, do pay the remaining two-thirds of the said costs.

3 Wa 27

To the report and proposed decree reported by the master, the defendants have filed exceptions.

The land on which the theatre is built is held in trust for the use of the stockholders of the Arch Street Theatre, and to and for the use of their legal representatives and assigns, agreeably to such rules and regulations, and to such provisions as they, the said stockholders, or a competent number of them, their legal representatives and assigns, shall have made and entered into, or shall hereafter make and enter into.

Under this power to make rules and regulations, the stockholders adopted Articles of Association, by which they are now governed.

One of these articles provides that the association shall be called the Arch Street Theatre, and the business and concerns shall be managed by five stockholders, who shall be denominated the Board of Agents for the Arch Street Theatre, and who shall be chosen by ballot by the stockholders, on the first Monday in February, in each and every year, at their annual meeting to be held on that day, and continue in office until the next annual election, and until others shall be duly elected.

Another article provides that the Board of Agents shall have full power to execute any lease with any person or persons applying for the same, upon such terms as they may deem most advantageous for the interests of the stockholders, and also to do and perform all things necessary for the same, and also all other powers for the recovery of the rent which may become due, and which the interest of the stockholders and the purposes of this association may require. Provided, that no lease shall be executed until the same has been submitted to the stockholders and approved by a majority of them, who shall or may be present at a meeting thereof, to be called as therein provided.

Other articles provide that the Board of Agents shall have charge of the whole property of the stockholders; that each stockholder shall be entitled at all times to a free admission to the theatre; and that the Board of Agents shall establish such rules and regulations in relation to the ticket of admis-

sion to which each shareholder is entitled as will secure to him or her the full enjoyment of the same.

The first question made under the exceptions to the report of the master is as to the release to Mrs. Drew of $3,000 of the rent of the theatre for the year ending 31st of July, 1878, and by reason of which he reports a decree against her in favor of the complainants for $292.95.

Other remissions of rent had been made to Mrs. Drew in the years 1862, 1863 and 1875, amounting to $6,600, which the master finds had been acquiesced in by all the stockholders. The last remission of rent was, like the others, the subject of a resolution of the Board of Agents, and was submitted to the stockholders for their approval and approved at the annual meeting of February 3, 1879, but by omission of the secretary of the meeting such approval did not appear upon the minutes. This action of the meeting, February 3, 1879, and the omission of the secretary, was brought to the notice of the adjourned annual meeting of the stockholders held April 12, 1880, and the resolution of the Board relative to the omission was approved, three of the present complainants voting against the approval; on account of the remission of $3,000 rent for the year ending July 31, 1878, Mrs. Drew, the lessee, on the 29th December, 1879, executed to the Board of Agents, for the stockholders, a bill of sale of all her property in the theatre; and the minutes of all but the last remission of rent were regularly entered on the books of the association.

The master puts his finding of this sum of $292.95 in favor of the complainants and against Mrs. Drew, on the ground that the stockholders of the theatre are part owners and not partners, and that, therefore, the Articles of Association, not having stipulated for such a remission of rent, the dissenting stockholders cannot be bound by the action of the Board of agents or a majority of the stockholders in respect thereof.

The powers conferred on the Board of Agents by the Articles of Association are to manage the business and concerns of the association, to lease the theatre with the approval of a majority of the stockholders, to do and perform all things

necessary for the same, and also all other powers for the recovery of the rent which may become due, and which the interest of the stockholders and the purposes of the association may require.

These powers seem broad enough to include a remission of the rent, if the interest of the stockholders and the purposes of the association should require it. The power to manage the business and concerns of the association would seem to include it. If under the powers for the recovery of the rent the Board of Agents should find it necessary to compromise and receive a part for the whole, the interest of the stockholders requiring it, and to avoid a total loss of the rent, would they not, under the powers conferred, be justified in so doing? Must they lose the whole because they cannot take a part and release the balance, they acting in good faith in this matter? The power to manage the business and concerns of the association includes such a power. All powers necessary to manage the business and concerns of the association are included in the grant of such a power by necessary implication.

The exercise of such a power might be necessary to prevent the abandonment of the theatre at an unfavorable season of the year, when it would be difficult or impossible to find a new lessee, and thereby incur great loss to the stockholders. We think it may be safely assumed that all powers necessary to manage the business of the association, and not specifically withheld from the Board of Agents, as in the case of the power to lease, are included in the grant to them of the power to manage the business and concerns of the association. And under certain circumstances no more necessary or valuable power for the benefit of the association could be exercised' than this power to remit a part or even the whole of the rent if necessary. As, for instance, if a worthless and unprincipled lessee were destroying the good name and character of the theatre by questionable or immoral exhibitions, and there was no other way to get rid of him.

Besides this, the action of the Board of Agents had the approval of a majority of the stockholders. By a perusal of

the Articles of Association it will be perceived that a majority of the stockholders were to have a controlling influence in the affairs of the association. A majority of the stockholders were to choose the judges of the election; a majority were to elect the Board of Agents; a majority were to approve the lease; two-thirds of the stockholders present at a stated or special meeting, duly called, could alter or amend the Articles of Association; and a majority of the stock of the association could authorize repairs, alterations or improvements of the theatre exceeding $500 a year. The Articles of Association seem clearly based upon the principle that the majority are to control the affairs of the association.

The distinction between co-owners and partners is clearly marked, but Baron Lindley, in his valuable work on Partnership, p. 60, says: "When, however, co-owners of property employ it with a view to profit, and divide the profit obtained by its employment, the difference, if any, between them and partners becomes very obscure. If each owner does nothing more than take his share of the gross returns obtained by the use of the common property, partnership is not the result. On the other hand, if owners convert these returns into money, bring that money into a common stock, defray out of it the expenses of obtaining the returns, and then divide the net profits, partnership is created in the profits, if not also in the property which yields them."

Moreover it would be most inequitable to decree that Mrs. Drew should pay this money to the complainants without reassigning to her the valuable property which she transferred to the stockholders when the Board of Agents released ner from the rent.

The next question under the exceptions relates to the restoration to the stockholders of the third bench or row of seats for their use under their tickets of admission.

For fifteen years prior to 1876 the Board of Agents had reserved three benches, containing thirty-seven seats, for the use of the stockholders; from September, 1876, to the present time, the stockholders had but the use of two benches, containing twenty-five seats. This was done by resolution of the

Board of Agents, and notice was sent by them to stockholders September 12, 1876, of the change and the relinquishment to the management of the third row of seats. There does not appear to have been any complaint made of this change until the meeting of the stockholders held February 2, 1880, when certain of the complainants and others prepared a petition to the Board of Agents, requesting them to restore the third row of seats for the use of *bona fide* stockholders only, and that the Board of Agents should not make another lease of the theatre until proposals are first advertised for six months, etc., and that the theatre hereafter shall be let to the highest responsible bidder.

Mr. Fareira, one of the complainants, then offered a resolution that the petition be referred to the incoming Board of Agents, with instructions to them to comply with the said requests as soon as possible.

Mr. Riter, one of the defendants, moved to amend the resolution by leaving it to the absolute discretion of the incoming Board of Agents, which was *unanimously* agreed to.

Notwithstanding this action, the complainants filed their bill at the March Term of this Court, 1880, the next term after the meeting of the stockholders, complaining of the matters which they, with the other stockholders, had unanimously agreed to leave to the absolute discretion of the incoming Board of Agents. This, in itself, would seem to be a sufficient answer to the complaint made by them respecting these seats.

The Board of Agents seem to have exercised a reasonable discretion in the matter of these seats. The Master reports that the evidence disclosed that the two stockholders' benches, seating twenty-five persons, were not always filled, and that the average attendance was much smaller than this. The evidence shows that for 244 performances, from September 6, 1880, to May 7, 1881, the average attendance in these seats was twelve persons, and that of the 244 performances, there were but twenty-seven performances in which the seats were full.

The present lease of the theatre to Mrs. Drew was made the 5th of February, 1877, when the stockholders had reserved

for their use but two rows of seats; and, although the lease provides that stockholders' seats shall be reserved for their exclusive use, this fact should not be overlooked in considering the exercise of a proper discretion in the Board of Agents respecting this matter, as affecting the rights of the lessee.

In view of the acquiescence of the complaining stockholders from 1876 to 1880, in the reservation of but two rows of seats, and their unanimous adoption with the other stockholders of the resolution to leave this matter to the absolute discretion of the Board of Agents, and of the facts proved relative to the occupation of these seats, we think they have not established any grievance of which they have the right to complain.

A Court will not interfere between members of companies for the purpose of enforcing duties arising out of matters which are properly the subject of internal regulation. It will not interfere to control a majority, unless it sees that the majority has been, or is doing, or is about to do that which it is illegal even for a majority to do; and it follows from this that the Court will not interfere in matters properly the subject of internal management until all reasonable attempts have been made to take the sense of the general body of partners on the matters in question; nor even then, unless it is called upon to interfere to give effect to the will of the majority against a factious minority; Lindley on Partnership, 895.

The next exception is because the learned master has erred in reporting a decree that the Board of Agents advertise for proposals to lease the Arch Street theatre in the manner indicated in this decree.

Whatever may be the rights of the complainants in this matter, we think they are premature in asking a decree of the Court at this time. By their own action at the meeting of stockholders of February 2, 1880, they left this question to the absolute discretion of the Board of Agents, and they have since taken no steps, except by filing this bill, either before the Board of Agents or at a stockholders' meeting to induce the action which they desire. The Articles of Association,

provide the manner in which the theatre shall be leased, and the Board of Agents and stockholders, acting in good faith within the powers conferred by the Articles of Association, are the sole judge of the terms and conditions and manner of leasing it.

If this were an association for purely pecuniary profit, such measures as would produce the largest pecuniary returns consistent with the permanent profit of the association, would be a controlling element in requiring such proposals to be advertised; but the Master has found that the association, in addition to its business character, exists to afford to the stockholders satisfactory dramatic entertainments as well. This should not be overlooked in construing the powers conferred on the Board of Agents and stockholders by the Articles of Association. The tastes and judgments of the stockholders are to be consulted as to the character of the entertainments to be performed. This cannot be secured by advertising for the highest and best pecuniary bidder. Other considerations enter into this matter. The capacity of the lessee to cater, not to the tastes of the general public, but to the tastes of the members of this association; their right to secure this by proper stipulations in the lease; the good character of the theatre; that nothing shall be offensive to decency and good morals; and all other matters which tend to make it a proper resort for the entertainment of themselves and their families.

The next exception is as to the costs. These will follow the final disposition of the bill.

The Master reports that "testimony was adduced intending to prove the allegations contained in the bill that Mr. Riter was and had been pecuniarily interested with the lessee in the management of the theatre. The attempted proof utterly failed, and at the argument counsel for the complainants admitted the charge of the bill on this head had not been made out. There was also no proof whatever of combination between Riter and the lessee, or between her and any other stockholder, improperly to rent the theatre in fraud of the stockholders' rights.

We cannot too strongly condemn the practice which prevails to an unwarranted extent in legal and equitable proceed-

ings, of charging parties to the proceedings with unlawful combinations and frauds, the proofs of which, as in this case, utterly fail. Such charges should not be made without the parties making them should first clearly satisfy themselves that they can be maintained. And in the utter failure of such proofs the presumption is against the makers of them, that they wantonly defamed the good names and reputation of their fellowmen.

The exceptions are sustained, and the bill is dismissed with costs.

---

Fareira and others then appealed from this decree.

*John G. Johnson, Esq.*, for appellants.

*F. M. Riter, T. J. Diehl and R. C. McMurtrie, Esqs.*, for appellees, cited Spering's Appeal, 71 Pa., 11; Lindley on Partnership, *548, *550; Pender vs. Lushington, L. R., 6 Ch. Div., 70; Stranton Iron and Steel Company, L. R. 16, Eq. Cases, 559; St. Mary's Church, 7 S. & R., 517; East Tenn. R. R. Co. vs. Gammon, 5 Sneed, 567; Keyser vs. Stansifer, 6 Ohio, 363; Kirk vs. Hodgson, 3 Johnson Ch., 400; Peacock vs. Cummings, 46 Pa., 434.

The Supreme Court affirmed the decree of the Common Pleas on April 17, 1882, in the following opinion,

PER CURIAM:

After a careful examination of this voluminous record, and very full and able argument at the bar, we can discover no sufficient ground upon which to disturb this decree. No bad faith is pretended in defendants. The powers of the Board of Agents, under the articles, were ample. Moreover, the particular acts complained of were approved by the whole body of the association at meetings where the complainants could have been heard. A Court of Equity would certainly never say that the majority of a private unincorporated association or partnership should not exercise their judgment in matters within the scope of the partnership; even though they should think that judgment unwise.

> Decree affirmed and appeal dismissed at the costs of the appellant.